IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.  Case Nos.:   1:15cr21/MW/GRJ
 1:18cv32/MW/GRJ

JAMES DANDY UYANNA

---

# REPORT AND RECOMMENDATION

This matter is before the court upon Petitioner's amended "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody."  (ECF No. 63.)   The Government has filed a response (ECF No. 72) and Petitioner has filed a reply.   (ECF No. 73.) The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a review of the record and the arguments presented, the court concludes that the Petitioner's motion should be denied without an evidentiary hearing.   *See* Rules 8(a) and (b) Governing Section 2255 Cases.

## BACKGROUND

Petitioner James Dandy Uyanna was sentenced to a total term of 36 months imprisonment after pleading guilty to three counts of a four-count superseding indictment in which he was charged with possession of a firearm by a convicted felon, possession of 15 or more unauthorized access devices and aggravated identity theft.[1]  Petitioner did not appeal his February 25, 2016 judgment.

Petitioner filed a "Motion to Vacate" dated February 12, 2018, in which he sought to vacate his guilty plea and alternatively sought relief pursuant to a Writ of Error Coram Nobis to vacate his conviction.  (ECF No. 61.)   He filed an amended motion pursuant to 28 U.S.C. § 2255 which is currently before the court.  The motion contains a single claim of ineffective assistance of counsel.  Petitioner contends that his appointed counsel, Anderson Hatfield, III, was constitutionally ineffective because counsel failed to advise Petitioner that a guilty plea would lead to mandatory deportation. The Government asserts that Petitioner's motion is both time barred and refuted by the record.

---

[1] Pursuant to the agreement, the Government dropped Count Four in which Petitioner was charged with transporting a stolen vehicle across state lines.

Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

## ANALYSIS

### *Timeliness*

Title 28 U.S.C. § 2255(f) imposes a one-year time limitation on the filing of motions under this section. The one-year period of time runs from the latest of:

(1) the date on which the judgment of conviction becomes final;
(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the petitioner was prevented from making a motion by such governmental action;
(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. §2255(f). If a defendant does not file an appeal, his conviction becomes final when the fourteen-day period for filing an appeal expires. *See* Fed.R.App.P. 4(b)(1)(A)(i); Fed. R. App. P. 26(a); *see Mederos v. United States*, 218 F.3d 1252, 1253 (11th Cir. 2000); *Ramirez v. United States*, 146 F. App'x 325 (11th Cir. 2005). In this case, Petitioner's conviction and sentence became final when the deadline elapsed for appealing the February 25, 2016 judgment, on March 10, 2016.

Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

Therefore, to be timely under § 2255(f)(1), Petitioner had to file his § 2255 motion not later than March 10, 2017.   He did not.

Petitioner contends that his motion is timely pursuant to § 2255(f)(4).  He asserts that he did not learn about the I.C.E. detainer against him until approximately one week before his release in August 18, 2017.   (ECF No. 63 at 12.)   Petitioner's case manager at U.S.P. Atlanta told him about the detainer only during his "final week" in B.O.P. custody.   According to Petitioner, the I.C.E. did not lodge the detainer from the beginning of his sentence, which impeded him from learning about the issue and filing the motion in a timely fashion, a seeming reference to § 2255(f)(2).   (ECF No. 73 at 7.)   He does not indicate when he believes the detainer was filed.  Petitioner was released from B.O.P. custody and turned over to I.C.E. on August 18, 2017.[2]   Both his original and amended motions were filed within one year from that date.   The Government did not specifically refute Petitioner's allegations of timeliness pursuant to § 2255(f)(4).   Therefore, the court will assume for purposes of this recommendation that Petitioner's motion is timely filed and address the merits of his claim.

---

[2] He is currently in custody at the Stewart Detention Center in Lumpkin, Georgia.
Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

### *Failure to Advise of Immigration Consequences*

Petitioner's lone claim for relief is that Mr. Hatfield did not advise him that a guilty plea would lead to mandatory deportation, and that had Hatfield done so, Petitioner would have chosen to go to trial.  (ECF No. 63 at 4, 16.)  Petitioner explains that had the issue of deportation come up before he entered his plea, he would have proceeded to trial to challenge "the speed radar gun and the accuracy of it," which led to the traffic stop. (ECF No. 63 at 16.)  In support of this statement he asserts that part of the reason his prior attorney, Darren Johnson, withdrew from representation was because Mr. Johnson had wanted Petitioner to enter a plea and Petitioner wanted to go to trial.  (ECF No. 73 at 7.)  Petitioner does not suggest that concern about immigration consequences played a part in his desire to go to trial during Mr. Johnson's representation of him.

In support of his claim that Mr. Hatfield did not provide him with accurate advice, Petitioner states that when he was released from B.O.P. custody and picked up by I.C.E., he called counsel and asked why he had not been told that his charge was deportable.  Petitioner recalls that Mr.

Hatfield's response was to the effect that "It didn't matter."   (ECF No. 63 at 15; ECF No. 73 at 8.)

The Government contends that Petitioner's claim that counsel did not inform him of the immigration consequences of his guilty plea is:

> unsupported by credible evidence of record, and entirely dependent on his own allegations, which are contradicted by the defendant's testimony at his plea colloquy that he had thoroughly discussed every aspect of his written plea agreement with counsel, and by counsel's affidavit.

(ECF No. 72 at 8-9.)

The Government points to the language of the plea agreement which stated:

> If the Defendant is not a citizen of the United States, the Defendant understands that this conviction may adversely affect the Defendant's immigration status and lead to deportation.

(ECF No. 36 at 4.)   The government also points out that during the plea colloquy, Petitioner, who had completed three years of college, testified under oath that he had read every paragraph of every page of the plea agreement and had thoroughly discussed it with his lawyer.   (ECF No. 65 at 19-20.)

The Court did not specifically mention the paragraph of the agreement addressing Petitioner's immigration status for very good reason. During the plea colloquy the Court expressly asked Petitioner where he was born and Petitioner falsely told the court under oath that he was born in Staten Island New York.  (ECF No. 65 at 4.) Had Petitioner not lied to the Court the Court most certainly would have reinforced to Petitioner the effect a guilty plea would have on his immigration status.

Additionally, it is undeniable that the evidence of Petitioner's guilt was overwhelming.  The Government argues that Petitioner cannot show that rejecting a plea agreement and giving up acceptance of responsibility credit would have been rational, because going to trial would have exposed Petitioner to a greater guidelines range.  (ECF No. 72 at 12.)  The Government characterizes a potential decision to reject a plea agreement as "insane, instead of rational."  (ECF No. 72 at 13.)  Although the Government's assessment of the evidence is likely correct, its argument does not take into account Petitioner's background, which warrants brief discussion.

Despite Petitioner's false assertion of citizenship at the change of plea hearing, the record reflects that Petitioner is not a U.S. citizen. Petitioner explains in his § 2255 motion that he survived the civil war in Liberia and was brought up in a refugee camp in Ghana.   (ECF No. 63 at 14-15.)   The Final Presentence Investigation Report ("PSR") reflects that Petitioner came to the United States in "approximately 2003" when he would have been around 24 years old.   (ECF No. 45, PSR ¶ 84.)[3]   Part of his family came to the United States in 1993 after being granted political asylum.   The PSR reflects Liberia as Petitioner's country of birth, with his citizenship and immigration status as "unknown."[4]   (ECF No. 45, PSR at 2.)   Petitioner did not object to this information.   (ECF No. 45 at 21.)

In his reply, Petitioner focuses on the fact that his plea agreement warned him only that his plea "may" lead to deportation.   (ECF No. 73 at 2.)   He argues that the "district court's admonishment" did not properly inform him of the consequences of the plea.   *See United States v.*

---

[3] The report also reflects that Petitioner's criminal history begins in 2005, with yearly convictions from 2006 through 2013, and multiple other arrests.   (PSR ¶¶ 56-68, 71-72, 74-80.)

[4] Petitioner refused to participate in the preparation of the PSR and would not answer any questions.   (ECF No. 45, PSR ¶ 81.)

*Akinsade*, 686 F.3d 248, 255 (4th Cir. 2012) (a district court's admonishment about immigration and deportation consequences during a plea colloquy can correct counsel's deficient performance and obviate prejudice).

Federal Criminal Rule 11(b)(1)(O) provides that during a plea proceeding the court must inform the defendant of, and determine that the defendant understands "that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future."  However, as discussed above, the plea proceeding conducted by the undersigned, did not mention the immigration consequences of the plea precisely because Petitioner falsely represented that he had been born in the United States. Petitioner's attempt to cast blame on his attorney for Petitioner's uncorrected falsehood is disingenuous and if accepted would allow a defendant, like Petitioner, to conceal his true citizenship as an issue to raise later on in the event the defendant believed his sentence was more severe than he expected.

In *Padilla*, the Supreme Court held that to meet the constitutional standards of effectiveness, counsel must inform her client whether a plea carries a risk of deportation. *Padilla*, 599 U.S. at 374. Where the deportation consequence is clear, the duty to give correct advice is equally clear. *Id.* at 369; *see Taylor v. State,* 422 S.C. 222, 227, 810 S. E. 2d 862 (S.Ct. S.C. 2018) (holding that under *Padilla*, counsel must do more than "discuss immigration" or advise petitioner he "might" face adverse immigration consequences when deportation was presumptively mandatory). The *Padilla* Court recognized that there are situations in which "the client's right to remain in the United States may be more important to the client than any potential jail sentence." *Padilla*, 599 U.S. at 368 (quoting *I.N.S. v. St. Cyr*, 533 U.S. 289, 323 (2001) (citation omitted)). Furthermore, "deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Lee v. United States*, 137 S. Ct. 1958, 1966 (2017) (quoting *Padilla*, 559 U.S. at 364 (footnote omitted)).

In *Lee*, the defendant, a lawful permanent resident, insisted that if he had known he would be deported as a result of a conviction "he would have gambled on trial, risking more jail time for whatever small chance there might be of an acquittal that would let him remain in the United States." *Lee,* 137 S. Ct. at 1966. The *Lee* Court made clear that in assessing a claim such as that raised herein, district courts need to consider more than the likelihood of success at trial. *Id.* When the consequences from a trial or a plea are, from a defendant's perspective, similarly dire, "even the smallest chance of success at trial may look attractive." *Id.* Notably, however, most damaging to Petitioner's case is the *Lee* Court's instruction that lower courts should look to contemporaneous evidence to substantiate a defendant's expressed preferences. *Id.*, at 1967. "Courts should not upset a plea solely because of post hoc assertions from a defendant." *Id.* The Court reversed Lee's conviction after finding that "substantial and uncontroverted evidence" supported his claim that he would not have accepted a plea had he known it would lead to deportation. *Lee*, 137 S. Ct. at 1969.

While it would have been quite understandable for Petitioner to wish to avoid deportation back to war-torn Liberia, there is absolutely no contemporaneous record evidence in this case that deportation was a primary concern. *See Dodd v. United States*, 709 F. App'x 593, 595 (11th Cir. 2017) (noting that despite being aware of the possibility of deportation, the record showed no contemporaneous evidence that defendant was concerned about deportation at her plea hearing or sentencing); *c.f. Rodriguez v. United States,* 730 F. App'x 39, 44 (2nd Cir. 2018) (remanding for development of the record on the issue of prejudice where there was reason to believe the defendant would have placed "paramount importance" on avoiding denaturalization); *United States v. Swaby*, 855 F. 3d 233, 243-44 (4th Cir. 2017) (finding that it was rational for a defendant with long familial ties to the United States, including a wife and children, to have taken any chance, no matter how slim, to avoid deportation by going to trial).

In sum in this case, Petitioner was advised in the plea agreement he admits reading that deportation was a consequence if he was not a U.S. citizen. Before sentencing Petitioner's counsel affirmatively advised

Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

Petitioner that he could be deported from the United States as mentioned in his plea agreement. The PSR did not identify Petitioner's current citizenship because Petitioner refused to participate in the interview. The Court affirmatively made inquiry during the change of plea hearing of Petitioner's citizenship. Petitioner surely knew full well throughout this case---and certainly during the change of plea hearing---that he was not a U.S. citizen. Despite knowing this Petitioner elected to lie to the Court under oath about his citizenship and falsely told the Court that he was born in New York, thus giving neither the Court nor the Government any further reason to reinforce to Petitioner that a felony conviction would lead to deportation.

Lastly, and most conspicuously absent from Petitioner's argument is any sworn evidence or argument that Petitioner placed paramount importance or had any concern about deportation even though the plea agreement advised Petitioner that deportation was a collateral consequence and his attorney reiterated to Petitioner before sentencing that deportation was a consequence of a felony conviction. Surely, if Petitioner had a legitimate concern about deportation he had ample opportunity to raise the issue before sentencing or even at sentencing.

Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

Instead Petitioner chose to affirmatively lie to the Court and the government concerning his true citizenship and remain silent until after he was sentenced.   Accordingly, Petitioner has failed to show any prejudice from his counsel's failure to advise him before the change of plea hearing that deportation was a consequence of a felony conviction.

## Conclusion

Based on the foregoing, the Court finds that Petitioner has not shown that he is entitled to § 2255 relief, or that an evidentiary hearing is warranted.   Petitioner's motion should be denied.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

Case Nos.: 1:15cr21/MW/GRJ; 1:18cv32/MW/GRJ

After review of the record, the court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED** that:

1. The "Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody" (ECF No. 63) should be **DENIED**.

2. A certificate of appealability should be **DENIED**.

**IN CHAMBERS** this 29th day of November, 2018.

*s/ Gary R. Jones*
GARY R. JONES
United States Magistrate Judge

## NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.**  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.